IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| IN RE:    RICHARD D. PASCHALL,<br><br>           Debtor. | Case No. 07-32048<br>Chapter 7 |
| ROY M. TERRY, JR., Chapter 7 Trustee,<br><br>           Plaintiff,<br><br>v.<br><br>RICHARD D. PASCHALL,<br>DEBORAH J. PRUNTY (f/k/a Deborah P. Paschall) and<br>THE DEBORAH J. PRUNTY LIVING TRUST,<br><br>           Defendants. | Adv. Proc. No. 08-03049 |

**MEMORANDUM OPINION**

Before the Court are the cross-motions of Roy M. Terry, Jr. (the "Trustee") and Deborah J. Prunty ("Prunty")[1] (together the "Parties") for summary judgment. The question presented herein is whether the Trustee can avoid the transfer of two parcels of real property from Richard D. Paschall (the "Debtor") and Prunty as tenants by the entirety to one of the defendants, The Deborah J. Prunty Living Trust dated June 26, 2002 (the "Trust"), under 11 U.S.C. § 547. Hearing was conducted on January 8, 2009 (the "Hearing"), at which counsel for the Trustee and counsel for Prunty and the Trust presented argument on the cross-motions for summary judgment. At the conclusion of the Hearing, the Court announced its decision to grant summary

---

[1] Prunty was formerly known as Deborah P. Paschall while she was married to Richard D. Paschall, the Debtor.

judgment in favor of all three of the Defendants[2] on Counts II, III and IV of the Complaint filed by the Trustee (the "Complaint").  The Court took under advisement the cross-motions for summary judgment with regard to Counts I (§ 547 Avoidable Preferences), Count V (§ 550 Transferee Liability), and Count VI (§ 363(h) Sale of Co-owned Properties) of the Complaint.

This Memorandum Opinion sets forth the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.[3]  The Court has subject-matter jurisdiction of this adversary proceeding pursuant to 28 U.S.C. §§ 157(a) and 1334 and the general order of reference from the United States District Court for the Eastern District of Virginia dated August 15, 1984.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(F), (K) and (O) in which final orders or judgments may be entered by a bankruptcy judge.  Venue is appropriate in this Court pursuant to 28 U.S.C. § 1409(a).

## Issues Presented

The Trustee contends that he is entitled to summary judgment because the execution of two quitclaim deeds by the Debtor and Prunty were transfers of an interest of the Debtor in property.  The Trustee maintains that, for purposes of § 547 of the Bankruptcy Code, the transfers occurred on the date that the quitclaim deeds were executed.  The transfers of the two properties were to or for the benefit of Prunty who was a creditor.  The Trustee argues that the transfers of the two properties were for or on account of an antecedent debt owed by the Debtor before the transfers were made.  The challenged transfers were made while the Debtor was insolvent.  The Trustee contends that Prunty was an insider of the Debtor at the time that the transfers of the properties occurred.  Finally, the Trustee maintains that the challenged transfers

---

[2] The Debtor is a co-defendant who appeared and participated at the Hearing *pro se*.  The Court finds that no interest of the Debtor is affected or otherwise involved in connection with the relief afforded herein.

[3] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  *See* Fed. R. Bankr. P. 7052.

2

were made within the one-year period preceding the Petition Date, they enabled Prunty to receive more than she would otherwise receive in this Chapter 7 case, and Prunty was the entity for whose benefit the transfers were made.

Prunty argues that she is entitled to summary judgment on all counts because the Debtor had no interest in the properties that were transferred to her. She maintains that she was not a creditor of the Debtor and that the transfers were not on account of antecedent debt. Finally, Prunty argues that she should not be deemed to be an insider of the Debtor.

## **Undisputed Facts**

The facts pertinent to Counts I and V of the Complaint are undisputed.[4] Prunty married the Debtor on June 29, 2002. On February 8, 2003, Prunty and the Debtor signed a Post-Marital Agreement (the "2003 Marital Agreement"). The 2003 Marital Agreement was later superseded with the Marital Agreement dated January 1, 2005 (the "2005 Marital Agreement"). On October 29, 2006, the Debtor filed a petition seeking relief under Chapter 13 of the Bankruptcy Code. By Order entered May 24, 2007, the Chapter 13 bankruptcy case was dismissed. On June 3, 2007 (the "Petition Date"), the Debtor filed the current voluntary petition under Chapter 7 of the Bankruptcy Code. The Trustee was appointed originally as interim Chapter 7 trustee and he continues to serve now as trustee in the bankruptcy case. The Trustee commenced this adversary proceeding on April 4, 2008, seeking to avoid the transfers of the Properties as preferential under 11 U.S.C. §547 (Count I), to recover the Properties or their value into the bankruptcy estate under 11 U.S.C. § 550 (Count V), and finally, to sell the Properties under 11 U.S.C. § 363(h) (Count VI).

---

[4] The Parties entered into a Stipulation of Facts filed on December 23, 2008.

3

Prunty sold her separate property, a home located at 40 Tillman Avenue, San Jose, California (the "San Jose Property"), on July 10, 2003. She received $586,285.73 from the sale. Two weeks later, Prunty put a deposit down on a piece of real property at 7104 Jocelyn Court, Warrenton, Virginia (the "Fauquier County Property"). After temporarily living in Richmond, Virginia, the Debtor and Prunty moved to northern Virginia so that the Debtor could begin new employment. A month later the residence on the Fauquier County Property was completed. Prunty paid cash at closing for the Fauquier County Property using the proceeds she had received from the sale of the San Jose Property and other separate property investments. Prunty paid 100% of the purchase price for the Fauquier County Property from assets that she owned prior to the marriage. By deed dated January 29, 2004, the Fauquier County Property was conveyed to the Debtor and Prunty as tenants by the entirety. The deed was recorded February 2, 2004, in the Clerk's Office of the Circuit Court of Fauquier County, Virginia (the "Fauquier County Clerk's Office"), in deed book 1081, at pages 210–211.

On or about February 17, 2004, the Debtor and Prunty borrowed $250,000 from Southern Trust Mortgage LLC. The loan was secured by a deed of trust recorded February 24, 2004, in the Fauquier County Clerk's Office, in deed book 1084, at pages 846–864. The loan proceeds were deposited into a joint checking account of the Debtor and Prunty. A portion of the loan proceeds was used to pay off the Debtor's unsecured debt, both premarital and marital. The Debtor gave Prunty $136,000 of the loan proceeds.

In the summer of 2004, the Debtor insisted that he and Prunty purchase the real property at 15018 Rosebay Forest Drive, Midlothian, Virginia 23112 (the "Midlothian Property"). This property was owned by the Debtor's mother and stepfather. The Debtor's mother wanted to buy another property, but was not able to qualify for a new loan if she was still liable on the loan for

4

the Midlothian Property. Prunty and the Debtor agreed to purchase the Midlothian Property from the Debtor's mother and stepfather. Approximately $25,000 was spent both pre-closing and post-closing to repair and to remodel the Midlothian Property so that it could be rented. By deed dated September 1, 2004, the Debtor's mother and stepfather conveyed the Midlothian Property to the Debtor and Prunty as tenants by the entirety. The deed was recorded on September 8, 2004, in the Clerk's Office of the Circuit Court of Chesterfield County, Virginia (the "Chesterfield County Clerk's Office"), in deed book 5955, pages 116–119. Prunty paid $42,767.26 from premarital assets at closing on the Midlothian Property and financed the balance by a $183,200 promissory note from Prunty to Southern Trust Mortgage LLC. The note was secured by a deed of trust from the Debtor and Prunty recorded September 8, 2004, in the Chesterfield County Clerk's Office, in deed book 5955, pages 120–143.

The Debtor and Prunty executed the 2005 Marital Agreement on March 2, 2005. As of March 2, 2005, the Fauquier County Property and Midlothian Property were still titled in the names of the Debtor and Prunty, as tenants by the entirety. The 2005 Marital Agreement provided that Prunty would become the exclusive owner of both the Fauquier County Property and the Midlothian Property (together, the "Properties"). The Debtor agreed to convey his interest in the Properties to Prunty by quitclaim deeds to Prunty as Trustee of the Trust in exchange for certain cash payments. The Debtor was not insolvent on March 2, 2005.

After signing the 2005 Marital Agreement, the Debtor became dissatisfied with its terms and insisted on entering into a buyout agreement that would require Prunty to pay cash to the Debtor faster than provided in the 2005 Marital Agreement. On March 31, 2005, the Debtor and Prunty signed a Buyout Agreement. The Debtor was not insolvent on March 31, 2005. Prunty

paid the Debtor all sums due under the 2005 Marital Agreement and the Buyout Agreement (together, the"Marital Agreements").

On January 30, 2006, Prunty filed for uncontested divorce in Fauquier County, Virginia. Trial was held July 31, 2006, on the divorce proceeding. Pursuant to the Marital Agreements, the Debtor and Prunty conveyed their interest in the Fauquier County Property to the Trust by quitclaim deed dated August 23, 2006. The deed was recorded August 25, 2006, in deed book 1230, page 1033, in the Fauquier County Clerk's Office. Also pursuant to the Marital Agreements, the Debtor and Prunty conveyed their interest in the Midlothian Property to the Trust by a quitclaim deed dated August 23, 2006. This deed was recorded September 5, 2006, in deed book 7338, page 0409, in the Chesterfield County Clerk's Office. By the time both of these deeds were executed and recorded, the Debtor had spent all the money paid to him by Prunty pursuant to the Marital Agreements, and the Debtor was insolvent.

The Debtor and Prunty were divorced by a final decree of divorce entered in Fauquier County Circuit Court on September 13, 2006 (the "Final Decree of Divorce"). The Final Decree of Divorce incorporated the 2005 Marital Agreement. The Final Decree of Divorce was recorded in the law order books and/or in the chancery order books located in the records room of the Fauquier County Clerk's Office, but not until the Petition Date. The Final Decree of Divorce was never recorded in the grantor/grantee index of the land records of the Fauquier County Clerk's Office, nor was it recorded in the land records of the Chesterfield County Clerk's Office. The 2005 Marital Agreement also was never recorded in the land records of either the Fauquier County Clerk's Office or the Chesterfield County Clerk's Office. By deed of distribution dated October 18, 2006, and recorded November 8, 2006, in deed book 1241, page 598, in the Fauquier County Clerk's Office, the Trust conveyed its interest in the Fauquier

6

County Property to Prunty. By deed of distribution dated October 18, 2006, recorded December 5, 2006, in deed book 7509, page 160, in the Chesterfield County Clerk's Office, the Trust conveyed its interest in the Midlothian Property to Prunty. Prunty gave no consideration to the Trust for the transfer of either of the Properties.

## Discussion

The standard for entry of summary judgment is well established. Summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (as incorporated by Fed. R. Bankr. P. 7056). A party moving for summary judgment bears the initial burden of demonstrating that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). In determining whether this showing has been made, the court must assess the evidence in the light most favorable to the party opposing the motion. *See, e.g., Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979). Summary judgment is appropriate only where there are no "disputes over facts that might affect the outcome of the suit," not mere peripheral or irrelevant facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The United States Court of Appeals for the Fourth Circuit has previously ruled that summary judgment should not be granted "even where there is no dispute as to the evidentiary facts in the case but only as to the conclusions to be drawn therefrom." *Pierce v. Ford Motor Co.*, 190 F.2d 910, 915 (4th Cir. 1951). The court in *Pierce* thus set out an elevated standard for summary judgment based on its concern that premature entry of summary judgment may deprive litigants of their right to trial. The court explained that summary judgment was appropriate where it was apparent that no issue of fact was necessary "to clarify the application of the law."

7

*Pierce*, 190 F.2d at 915.  The facts of this case readily satisfy the heightened standard for summary judgment in *Pierce*.  As both Parties have filed motions for summary judgment, neither party will be deprived of a right to trial if summary judgment is entered against either one or the other of them.

If the moving party demonstrates that there is no genuine issue of material fact, the burden shifts to the nonmoving party to produce evidence to demonstrate that there is indeed a genuine issue for trial.  Fed. R. Civ. P. 56(e)(2) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial.  If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."); *see also RGI, Inc. v. Unified Indus., Inc.*, 963 F.2d 658 (4th Cir. 1992).  Summary judgment "is favored as a mechanism to secure the 'just, speedy and inexpensive determination' of a case" when the requirements of Rule 56 are met.  *Thompson Everett, Inc. v. Na'l Cable Adver., L.P.*, 57 F.3d 1317, 1322–23 (4th Cir. 1995) (quoting Fed. R. Civ. P. 1).  The Parties assert that summary judgment is appropriate in this case because there is no dispute as to any material fact regarding the subject transactions.

### *Count I*

The trustee has the burden of proving the avoidability of the transfers under § 547(b) of the Bankruptcy Code, and Prunty has the burden of proving the nonavoidability of the transfers under § 547(c) of the Bankruptcy Code.  11 U.S.C. § 547(g).

The Trustee contends that the transfers of the Debtor's interest in the two Properties from the Debtor and Prunty, as tenants by the entirety, to the Trust and then ultimately to Prunty

8

individually were avoidable preferences under 11 U.S.C. § 547. That section provides in relevant part that:

> The trustee may avoid any transfer of an interest of the debtor in property –
> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made –
>   (A) on or within 90 days and one year before the date of filing the petition;
>   (B) between 90 days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
> (5) that enables such creditor to receive more than such creditor would receive if
>   (A) the case were a case under chapter 7 of this title;
>   (B) the transfer had not been made; and
>   (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

The Trustee maintains that the execution, delivery and recordation of the two quitclaim deeds constitute a "transfer of an interest of the debtor in property." 11 U.S.C. § 547(b). The term "transfer," as employed in the Bankruptcy Code, is an extremely broad concept. "'[T]ransfer' means each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an interest in property." *See* 11 U.S.C. § 101(54)(D). The term "transfer" encompasses every means and manner by which property can pass from ownership and possession of another, and any transaction that reduces or extinguishes valuable legal rights is subject to avoidance. *See Weaver v. Kellogg,* 216 B.R. 563, 573 (S.D. Tex. 1997) (citing 11 U.S.C. § 101(54), and *Besing v. Hawthorne* (*In re Besing*), 981 F.2d 1488, 1492 (5th Cir. 1993) (quoting *Pirie v. Chicago Title & Trust Co.*, 182 U.S. 438 (1901))).

An "interest of the debtor in property" is not defined by the Bankruptcy Code. *Matson v. Grease Monkey Int'l, Inc.* (*In re BEV of Va., Inc.*), 237 B.R. 311, 314 (Bankr. E.D. Va. 1998). The nature of the Debtor's interest in the Properties is governed by state law. *Id.* (citing *Am. Bankers Ins. Co. of Fla. v. Maness,* 101 F.3d 358, 363 (4th Cir. 1996) (quoting *Butner v. United States,* 440 U.S. 48, 55 (1979))); *see also McKenzie v. Irving Trust Co.*, 323 U.S. 365, 369–70 (1945) (explaining that although what constitutes a transfer and when it is complete is a federal question, in the absence of any controlling federal statute a creditor or bona fide purchaser must prove that he acquired rights in the property transferred by the debtor by virtue of a state law).

Prunty argues that the 2005 Marital Agreement transferred equitable title in the Properties to her and that the quitclaim deeds merely transferred legal title. She argues that Debtor's obligation to convey his interests in the Properties to her had been judicially recognized pre-petition in the Final Decree of Divorce, which incorporated the 2005 Marital Agreement. Citing *Brogan v. Brogan*, 31 Va. App. 769, 525 S.E.2d 618 (2000) and 11 U.S.C. § 541(d), Prunty argues that property in which the Debtor holds only bare legal title and not an equitable interest becomes property of the estate under subsection § 541 (a)(1) or (a)(2) of the Bankruptcy Code only to the extent of the Debtor's legal title to the property and not to the extent of any equitable interest the Debtor does not hold.

Prunty's augments are misplaced. First, the limitation found in § 541(d) of the Bankruptcy Code on the Debtor's interest in property applies only to § 541(a)(1) and (2) of the Bankruptcy Code. It does not apply to § 541(a)(3) and (4) of the Bankruptcy Code, which allow trustees to bring into the bankruptcy estate property recovered from avoidable transfers. *Mayer v. United States* (*In re Reasonover*), 236 B.R. 219, 228 (Bankr. E.D. Va. 1999). "Section 541(d)

10

. . . does not, expressly or by fair implication, limit or abrogate the trustee's ability to recover property under his avoidance powers simply because the debtor has no equitable interest in that property." *Id.* Second, deeds to real estate and contracts to sell real estate are void as to lien creditors except from the time that the instrument is recorded in the county or the city in which the property lies. Va. Code Ann. §55-96; *see also Tribby v. Tribby,* No. C-91-98, 1992 Va. Cir. LEXIS 132 (Feb. 27, 1992).

The 2005 Marital Agreement is a contract "made in respect to real estate . . . or made for the conveyance or sale of real estate" under Va. Code Ann. § 11-1. The 2005 Marital Agreement was never recorded in the land records of either Fauquier County or Chesterfield County. Because it was not recorded, it is void as against the Debtor's judgment creditors under Virginia Code § 55-96. *Tribby*, 1992 Va. Cir. LEXIS 132, at *4–5. The Trustee is deemed to be a hypothetical lien creditor under Bankruptcy Code § 544(a)(1), and a hypothetical bona fide purchaser of the real estate under Bankruptcy Code § 544(a)(3), as of the Petition Date. *See Phillips v. Chandler,* 215 B.R. 684, 686, 689 (E.D. Va. 1997) (holding an unrecorded divorce decree is not capable of blocking a Chapter 7 bankruptcy trustee's hypothetical lien claim against real property transferred by that divorce decree). While the unrecorded 2005 Marital Agreement was binding upon the Debtor and Prunty *inter se*, it had absolutely no effect upon their third party creditors, including the Trustee as a hypothetical lien creditor.

The Debtor owned an undivided one-half interest in the Properties prior to the transfers. *See Sundin v. Klein,* 221 Va. 232, 241, 269 S.E.2d 787, 792 (1980). Even though Prunty may have paid the full price for the Properties held in the entirety estate, it is presumed that she made a gift to her cotenant of an undivided one-half interest in the Properties. *See id.* The quitclaim deeds transferred that interest of the Debtor in the Properties to Prunty.

11

Notwithstanding that the initial transfer of each of the Properties was to the Trust, which then transferred the Property to Prunty, the challenged transfers were to or for the benefit of Prunty. *See* 5 *Collier on Bankruptcy* ¶ 550.02[4][a], at 550-19 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2008) (citing *Kupetz v. United States* (*In re Cal. Trade Technical Schs., Inc.*), 923 F.2d 641 (9th Cir. 1991) (holding entity was an initial transferee where entity was the beneficiary of the trust fund that received the initial transfer)).

Prunty was a creditor of the Debtor at the time of the transfers. At the time the Debtor transferred the Properties to Prunty, he was obligated to do so under the terms of the 2005 Marital Agreement.[5] That obligation to transfer the Properties, which was legally enforceable, rendered Prunty a creditor of the Debtor. The Bankruptcy Code defines the word "creditor" to mean any "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10)(A). The word "claim" is defined broadly by the Bankruptcy Code either as (A) a right to payment—whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (B) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment—whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured. 11 U.S.C. § 101(5)(A), (B); *see also Callahan v. Petro Stopping Ctr. #72* (*In re Lambert Oil Co.*), 347 B.R. 173, 179 (W.D. Va. 2006).

The Bankruptcy Code governs the time when the transfers are deemed to have occurred. First, § 547 provides that "[a] transfer of real property . . . is perfected when a bona fide

---

[5] The 2005 Marital Agreement stated: "The parties agree that the Wife shall become the exclusive owner of such property and that the Husband shall relinquish his interest in the marital property to the Wife. Husband agrees to convey to the Wife by quitclaim deed all of his right, title and interest in said property to Deborah Paschall, Trustee of the Deborah J. Prunty Living Trust dated June 26, 2002." 2005 Marital Agreement, at para. 15(a)(2).

12

purchaser of such property from the debtor . . . cannot acquire an interest that is superior to the interest of the transferee." 11 U.S.C. § 547(e)(1)(A). Under this provision, perfection is the key to determining when a § 547 transfer occurred. That determination must be made by reference to state law. Virginia recording statutes provide that contracts in writing and deeds are "void to all purchasers for valuable consideration without notice not parties thereto . . . until and except from the time it is duly admitted to record. . . ." Va. Code Ann. § 55-96.[6] The transfers were perfected when the quitclaim deeds were recorded.

Second, the time lapse between the execution of the quitclaim deeds transferring the Properties and the date upon which the deeds were recorded determines when the transfers will be deemed to have occurred. Bankruptcy Code § 547(e)(2) provides in relevant part:

For the purposes of this section . . . a transfer is made –

>   (A)   *at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 30 days after, such time . . .* ;
>   (B)   at the time such transfer is perfected, if such transfer is perfected after such 30 days; or
>   (C)   immediately before the date of the filing of the petition, if such transfer is not perfected at the later of
>       (i)  the commencement of the case; or
>       (ii)  30 days after such transfer takes effect between the transferor and the transferee.

11 U.S.C. § 547(e)(2) (emphasis added). As the quitclaim deeds for the Properties were perfected by recordation within 30 days after the deeds were executed, the transfer of Debtor's

---

[6] The Virginia Code provides in relative part:
> **§ 55-96. Contracts, etc., void as to creditors and purchasers until recorded; priority of credit line deed of trust.** – A. 1. Every (i) such contract in writing, (ii) deed conveying any such estate or term, (iii) deed of gift, or deed of trust, or mortgage conveying real estate or goods and chattels and (iv) such bill of sale, or contract for the sale of goods and chattels, when the possession is allowed to remain with the grantor, shall be void as to all purchasers for valuable consideration without notice not parties thereto and lien creditors, until and except from the time it is duly admitted to record in the county or city wherein the property embraced in such contract, deed or bill of sale may be. . . .

Va. Code Ann. § 55-96.

13

interests in the Properties occurred on August 23, 2006— the date upon which the quitclaim deeds were executed. The transfer of the two Properties did not occur, as Prunty contends, upon execution of the 2005 Marital Agreement.

Although the transfers did not occur upon execution of the 2005 Marital Agreement, the transfers were made pursuant to the Debtor's obligation under the 2005 Marital Agreement. The challenged transfers were thus for or on account of an antecedent debt[7] owed by the Debtor prior to the transfers because the 2005 Marital Agreement was executed on March 2, 2005 and the transfers occurred on August 23, 2006. The Parties stipulated that the Debtor was insolvent on August 23, 2006.

The transfer of the Properties occurred within the one-year period preceding the Petition Date. For purposes of § 547 of the Bankruptcy Code, Prunty is an insider of the Debtor. The insider relationship is determined as of the date of the transfer of the Properties. *Dent v. Martin*, 86 B.R. 290, 292 (S.D. Fla. 1988) ("The language of [Bankruptcy Code] section 547(b)(4)(B) clearly states that an insider relationship is to be determined on the *exact date* of the challenged transfer." (quoting *Mc Williams v. Gordon* (*In re Campo Rockhill, Inc.*), 12 B.R. 829, 834 (Bankr. E.D. Pa. 1981) (emphasis in original))); 2 *Collier on Bankruptcy* ¶ 101.31, at 101-143 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2008) ("Such creditor must be an insider at the time of the transfer in order for the trustee to avoid the transfer."). The facts that Prunty and the Debtor were later divorced and that they were divorced as of the Petition Date are of no moment.

As Prunty was married to the Debtor at the time of the transfer of the Properties, she was an insider of the Debtor. The term "insider" is defined to include "a relative of the debtor." *See* 11 U.S.C. § 101(31)(A)(i). Section 102(3) of the Bankruptcy Code provides that the term "includes"

---

[7] The term "debt" means liability on a claim. 11 U.S.C. §101(12).

14

is not limiting. The term "relative" is then defined as an "individual related by affinity or consanguinity within the third degree as determined by common law." 11 U.S.C. § 101(45). The meaning Congress sought to ascribe to the term "relative" is discussed in the legislative history of the Bankruptcy Code:

> [A] former spouse is not a relative, but if, for example, for purposes of the preference section, proposed 11 U.S.C. 547(b)(4)(B), the transferee was a spouse of the debtor at the time of the transfer sought to be avoided, then the transferee would be a relative and subject to insider rules, even if the transferee were no longer married to the debtor at the time of commencement of the case or at the time of the commencement of the preference proceeding.

*Sumski v. Daggett* (*In re Hoxie*), No. 02-1127-JMD, 2003 Bankr. LEXIS 950, at *8–9 (Bankr. D.N.H. July 24, 2003) (quoting H.R. Rep. No. 95-595, at 313 (1977); S. Rep. No. 95-989, at 26 (1978)). "A spouse of the debtor is a relative as defined by section [101(45)] because the definition includes individuals 'related by affinity.'" *Miller v. Schuman* (*In re Schuman*), 81 B.R. 583, 585 (B.A.P. 9th Cir. 1987); *accord* 2 *Collier on Bankruptcy* ¶ 101.45, at 101-184 ("The definition of 'relative' does not explicitly state 'and shall include the spouse' as did paragraph (27) of the former Act. The phrase is unnecessary as an 'individual related by affinity' describes an individual related by marriage – thus, the individual's spouse is, of course, included. However, a former spouse will not be considered a relative, as the definition should be applied as of the time the transaction took place. But if, for example, the transferee of an alleged preferential transfer was still a spouse at the time of the transfer sought to be avoided, then the transferee would be deemed an "insider" and the trustee would have the power to avoid such a transfer.").

Finally, the transfer of the two Properties enabled Prunty to receive more than she otherwise would receive in this Chapter 7 case if the transfer had not been made, and if she receives payment of her claim to the extent provided by the provisions of the Bankruptcy Code. The Trustee has established that (1) Prunty is an unsecured creditor because she did not record the

15

2005 Marital Agreement or Final Decree of Divorce; (2) debts arising from property settlement agreements are not priority claims; and (3) the estate will not distribute a 100% payout to unsecured creditors. *See Matson v. Grease Monkey Int'l, Inc.* (*In re BEV of Virginia, Inc.*), 237 B.R. 311, 315 (Bankr. E.D. Va. 1998) (holding that if a trustee establishes those three elements, he has satisfied section 547(b)(5)). Accordingly, the requirements of 11 U.S.C. § 547(b)(5) have been met in this case.

The Trustee has satisfied all of the elements of § 547(b) of the Bankruptcy Code to establish that the transfers of the two Properties from the Debtor and Prunty to Prunty are avoidable preferences. Prunty has failed to show that any of the defenses under 11 U.S.C. § 547(c) are available to her. Accordingly, the Trustee is entitled to summary judgment on Count I of his Complaint. Prunty's cross motion for summary judgment as to Count I will be denied.

### *Count V*

In Count V of his Complaint, the Trustee seeks to restore the estate to the financial condition it would have enjoyed had the transfers not occurred. Section 550 of the Bankruptcy Code allows the Trustee, once he has avoided the transfers of the two Properties, to recover either the Properties or their value from the initial transferee or from the person for whose benefit the transfer was made. *See* 11 U.S.C. § 550(a)(1), (2). "To 'avoid,' in the legal context, means 'to render void.'" *Coleman v. Cmty. Trust Bank,* 426 F.3d 719, 726 (4th Cir. 2005) (quoting *Black's Law Dictionary* 146 (8th ed. 2004)). The Trustee's avoidance of the transfers of the two Properties by quitclaim deeds as preferential transfers reverts title to the Properties in the Debtor and Prunty as tenants by the entirety. The Final Decree of divorce that was entered on September 13, 2006, converted the tenancies by the entirety into tenancies in common. Va. Code Ann. § 20-111; *see also Cordova v. Mayer* (*In re Cordova*), 73 F.3d 38 (4th Cir. 1996). It is the Debtor's interest in

16

both of the Properties as a tenant in common with Prunty that the Trustee can recover under § 550 and bring back into the Bankruptcy estate.[8] Prunty has not presented any evidence that would show that she was a transferee[9] who took the Properties from the Trust (1) for value, (2) in good faith, and (3) without knowledge of the avoidability of the transfers such that the Trustee would be prevented from recovering the Properties pursuant to § 550(b) of the Bankruptcy Code. *See King v. United States* (*In re Reasonover*), No. 98-1288, 2001 WL 1168181, at *5 (Bankr. E.D. Va. Apr. 16, 2001) (holding that the transferee has the burden of proof under § 550(b) of the Bankruptcy Code). Accordingly, the Trustee is entitled to summary judgment on Count V of his Complaint, and he may recover the avoided one-half interest in the Properties under § 550(a) of the Bankruptcy Code for the benefit of the bankruptcy estate. Prunty's cross-motion for summary judgment as to Count V will be denied.

## *Count VI*

The transfer of the Properties having been avoided under Bankruptcy Code § 547 of the Bankruptcy Code, and the Properties having been recovered for the benefit of the bankruptcy estate under Bankruptcy Code § 550, the Trustee and Prunty now hold the Properties as tenants in common. In Count VI of his Complaint, the Trustee seeks authority to sell the Properties under 11 U.S.C. § 363(h), which provides:

> Notwithstanding subsection (f) of this section, the trustee may sell both the estate's interest, under subsection (b) or (c) of this section, and the interest of any co-owner in property in which the debtor had, at the time of the commencement of the case, an undivided interest as a tenant in common, joint tenant, or tenant by the entirety, only if--

---

[8] The Trustee's strong arm powers under 11 U.S.C. § 544 trump any interest that Prunty asserts in the Debtor's one-half interest in the Properties that the Trustee has recovered for the estate. *Mayer v. United States* (*In re Reasonover*), 236 B.R. 219, 228 (Bankr. E.D. Va. 1999).

[9] The Court has already found that Prunty is the entity for whose benefit the transfer of the two properties was made. *See supra* p. 12.

> (1) partition in kind of such property among the estate and such co-owners is impracticable;
>
> (2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;
>
> (3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and
>
> (4) such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

11 U.S.C. § 363(h).

The Trustee alleges in Count VI (i) that the price at which each of the Properties could be sold is greater than the aggregate value of all liens on the Properties; (ii) that partition of the Properties among the estate and co-owner Prunty is impracticable; (iii) that sale of the estate's undivided interest in the Properties would realize significantly less for the estate than sale of the Property free of the co-owner's interest; (iv) that the benefit to the estate of a sale of the Properties free of the interest of the co-owner outweighs the detriment, if any, to Prunty; and (v) that the Properties are not used in the production, transmission, or distribution, for sale of electric energy or of natural or synthetic gas for heat, light, or power.

Prunty responded to Count VI in her Answer by denying that the Trustee has any claim to the Properties under any theory of law whatsoever.[10] She avers that to the extent that paragraphs 50 through 55 of the Trustee's Complaint state any factual allegations or legal conclusions, they are denied.

As the Parties have not stipulated to the facts alleged in Count VI, and as Prunty has denied the Trustee's factual allegations set forth in paragraphs 50 through 55, there remain

---

[10] The Court has dispensed with this defense already, having determined that the Trustee is entitled to summary judgment on Counts I and V of the Complaint, and therefore, that the Trustee owns the Properties with Prunty as tenants in common.

18

material facts in dispute as to Count VI that prevent the Court from granting summary judgment to the Trustee on Count VI at this time. Therefore, both Parties' motions for summary judgment as to Count VI will be denied.

## Conclusion

Based upon the stipulation of undisputed facts between the Parties, the Trustee has established all of the elements necessary to avoid the transfer of the two Properties from the Debtor and Prunty as tenants by the entirety to Prunty individually as preferential transfers under §547(b) of the Bankruptcy Code. Execution of the quitclaim deeds constituted transfers of interests of the Debtor in property. For purposes of § 547 of the Bankruptcy Code, the transfers occurred on August 23, 2006—the date upon which the quitclaim deeds were executed. The transfers of the two Properties was to or for the benefit of Prunty, who was a creditor. The transfers of the Properties were for or on account of an antecedent debt owed by the Debtor before the transfers were made. The Properties were transferred while the Debtor was insolvent. For purposes of § 547 of the Bankruptcy Code, Prunty was an insider of the Debtor. The Properties were transferred during the one-year period preceding the Petition Date. The transfers of the Properties to Prunty enabled her to receive more than she would otherwise be entitled in this Chapter 7 case, and Prunty was the entity for whose benefit the transfers were made. Therefore the Trustee is entitled to summary judgment on the preference count in his Complaint and the transfer of the two Properties will be avoided.

Avoidance of the transfers reverts title to the Properties to Prunty and the Debtor as tenants by the entirety. The effect of the Final Decree of Divorce was to convert the tenancy by the entirety estate in each of the properties into a tenancy in common. The Trustee is entitled to recover that interest of the Debtor in the two Properties for the benefit of the bankruptcy estate

under § 550 of the Bankruptcy Code. The Trustee and Prunty now own the properties as tenants in common.

The Trustee may not sell the estate's interest along with Prunty's interest in the Properties until he has satisfied the requirements of 11 U.S.C. § 363(h). As there remain material facts in dispute as to Count VI, the Trustee is not entitled to summary judgment as to this count at this time. A separate order shall issue.

Entered: _____

                 _____/s/ Kevin R. Huennekens_____
                 UNITED STATES BANKRUPTCY JUDGE

Copies to:

**Roy M. Terry, Jr.**
P.O. Box 2188
Richmond, VA  23218-2188

**John C. Smith**
DurretteBradshaw, PLC
600 East Main Street, 20th Floor
Richmond, VA  23219

**Richard D. Paschall**
11603 Locust View Court
Louisville, KY  40299

**Ann M. Callaway**
Ann M. Callaway, P.C.
15 Garrett St.
Warrenton, VA  20186